# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**NES EQUIPMENT RENTALS, L.P.**                                                               **PLAINTIFF**

**V.**                                                     **CAUSE NO.: 3:07CV76-SA-SAA**

**HARVEY C. GREEN CONSTRUCTION**
**COMPANY, INC., ET AL.**                                                        **DEFENDANTS**

## MEMORANDUM OPINION

This cause comes on for consideration on Mandal's Motion for Summary Judgment [42], NES Equipment Rentals' Motion for Summary Judgment [44], Harvey C. Green Construction Company, Inc.'s Motion for Summary Judgment [46], and Lexington Insurance Company's Motion to Intervene [63]. The Court finds as follows:

The plaintiff, NES Equipment Rentals ("NES") brings this action against Harvey C. Green Construction Company, Inc., ("HCGCC") alleging breach of contract. HCGCC was a general contractor for the renovation of a building on the campus of the University of Mississippi. On July 19, 2004, HCGCC rented a forklift from the plaintiff. A rental contract was prepared but not signed upon initial delivery. The agreement was later signed on October 20, 2004.

During the renovation, HCGCC subcontracted with Mandal's Inc. ("Mandal's") to perform various tasks on the roof of the building. In November of 2004, Mandal's hired Steven Patrick Nance and his roofing crew for the roofing job to be commenced on November 10, 2004.

On November 11, 2004, weather conditions were inclement. At approximately 3:00 p.m., Richard Green of HCGCC ceased work and closed the jobsite due to the weather conditions. At approximately, 3:30 p.m., Mr. Nance and his crew, Calvin Hoda, John Raymond Horton, James Edwards, and Terrence Dorsey, arrived at the job site. It is undisputed that Nance and his crew

were the only persons at the job site when they arrived. No representatives of HCGCC or any subcontractors were present. Terrence Dorsey operated the forklift to lift the remaining Nance crew members along with their equipment approximately forty feet in order to access the roof of the building. As the members were being lifted, Dorsey extended the boom of the forklift to the roof, and Dorsey moved the machine forward. The forklift tipped over, and all four men were thrown to the ground. Hoda and Horton died as a result of the accident while Nance and Edwards suffered serious bodily injuries.

In December of 2005, Steven Nance filed a complaint against NES, Pettibone/Traverse Lift, LLC and JJM&Z Associates, Inc. d/b/a Star Industries, Inc. in the United States District Court for the Northern District of Mississippi ("Nance litigation") alleging strict liability, failure to warn, and negligence. The Nance litigation went to trial in September of 2007, and the action was dismissed on the merits after the jury found NES was not negligent. NES is presently defending three other lawsuits arising out of this accident in federal court.

NES filed this declaratory action alleging that HCGCC breached the parties' contract, specifically paragraphs 3(a), 3(c), and 19. NES argues that HCGCC 1) failed to read and comply with all of the safety instructions, 2) allowed unauthorized use of the equipment it rented from NES, 3) failed to ensure that the operators of the equipment rented from NES had been properly trained and certified, 4) allowed the keys to remain in the ignition of the subject forklift without supervision, 5) failed to carry commercial general liability insurance which named NES as an additional insured, 6) failed to provide NES with a certificate of insurance evidencing the current coverage, and 7) should indemnify NES for all costs, attorneys' fees, and expenses.

Specifically, NES cites the rental agreement that was signed on October 20, 2004. Paragraph 3 entitled "Customer Obligations" contains a subparagraph a. titled "Operation of Equipment" which states:

> Customer shall use the Equipment only for the purposes for which it is intended. Customer warrants that: 1) it and its appropriate personnel will read and comply with all the safety instructions; 2) it has received and reviewed the Operator's Manual for the Equipment and understands the proper and safe operation and intended use of, and the maintenance requirements for the Equipment; 3) no person shall use or operate said Equipment if the operating instructions and/or safety/warning labels are missing, damaged, or in any way obscured; 4) its operators have been properly trained, and if applicable, licensed, in the safe and proper operation and intended use of the Equipment; 5) it will insure that all fluid levels (water, oil, etc.) are properly maintained and that tires are inflated to recommended pressures at all times when equipment is in use. CUSTOMER AGREES TO IMMEDIATELY NOTIFY COMPANY ABOUT ANY ACCIDENTS INVOLVING THE EQUIPMENT OR DAMAGE TO THE EQUIPMENT FROM ANY CAUSE WHATSOEVER, AND TO PRESERVE THE EQUIPMENT AND THE ACCIDENT ARE (sic) UNTIL SUCH TIME AS THE COMPANY HAS COMPLETED ITS INVESTIGATION.

Paragraph 3 (c) titled "Insurance" reads:

> Customer shall be responsible for carrying commercial general liability including a waiver of subrogation, which limits not less than $1,000,000 Each Occurrence and $2,000,000 in the aggregate including products and completed operations as well as property insurance covering the equipment rented. Such coverage shall name the Company as an additional insured, covering all losses and damages. Such coverage shall be endorsed to provide coverage on a direct and primary basis over other valid and collectible insurance. Customer will provide Company with certificates of insurance evidencing the current coverage in types and amounts and from companies satisfactory to Company. These insurance requirements are intended to cover any indemnity obligations lessee may have to the Company under this contract. Customer hereby assigns to Company all proceeds from such insurance, conveys and equitable lien in said proceeds, and directs any insurer directly to pay such proceeds to Company and authorizes Company to endorse any drafts or checks for such proceeds.

Paragraph 19 titled "Indemnity" states:

> Customer agrees to indemnify and hold Company harmless against any and all claims, demands, or suits (including costs of defense, attorney's fees, expert witness fees, and all other costs of litigation) for any and all bodily injury, property damage, or any other damages or loss, regardless of whether such injury damage or loss is caused in whole or part by negligence, which arise out of, result from, or relate to the use, operation,

condition, or presence of the equipment except where such injury, damage or loss is caused solely by the Company.

Thus, NES declares that HCGCC breached the contract and failed to indemnify and hold NES harmless against the claims of Steven Nance in the underlying litigation and should indemnify NES in the other three pending litigations.

On December 4, 2007, HCGCC filed a Third Party Complaint against Mandal's seeking a declaratory judgment to determine the rights and duties of HCGCC and Third Party Defendant, Mandal's. Specifically, HCGCC seeks the Court's determination of whether Mandal's had an insurance policy in effect at the time of the accident, on November 11, 2004, or alternatively, that Mandal's failure to have such coverage for HCGCC is a breach of the Subcontract between HCGCC and Mandal's. Specifically, HCGCC avows that Mandal's was to maintain liability insurance coverage as referenced in the subcontract which reads:

> ***Section 13.*** The Subcontractor shall obtain, before commencement of work, and maintain until final acceptance of the Prime Contract, full insurance coverage, including as a minimum the same types of insurance at the same policy limits which are specified by the Prime Contract or which the Contractor actually obtains for this Project, whichever are greater. The Subcontractor is hereby made responsible for determining the types and extent of such additional insurance as may be necessary to give adequate and complete protection to the Subcontractor, the Contractor, and the Owner from claims for property damage and from claims for personal injury, including death, which may arise from or be connected with this Subcontract, whether such claims relate to acts of omissions of Subcontractor, of any of its subcontractors, or anyone directly or indirectly employed by any of them. If the Contractor or the Owner carries builders risk or other insurance which may apply to the Subcontractor's work or which otherwise may inure to the benefit of the Subcontractor the Subcontractor shall be responsible for all deductibles and for any inadequacy or absence of coverage, and the Subcontractor shall have no claim or other recourse against the Contractor or against the Owner for any costs or loss attributable to such deductibles or coverage limitations. Prior to execution of this Subcontract, the Subcontractor shall deliver to the Contractor Certificates of Insurance, certifying the types and amounts of coverage, certifying that said insurance will be in force before Subcontractor starts work, and certifying that said insurance applies to all activities and liability of the Subcontractor pursuant to this Subcontract. No policy of insurance may be cancelled or reduced during the period of construction, and the Subcontractor shall obtain an endorsement to its policies and insurance certificates providing substantially as follows: Insurer may not cancel this policy or reduce coverage for a period of thirty (30)

days after Harvey C. Green Construction Company, Inc. has acknowledged receipt of written notice of the Insurer's intention to cancel or reduce the coverage. The insurance and indemnity obligations of this Subcontract are nondelegable. The Subcontractor shall not sublet nor subcontract any part of this Subcontract without retaining absolute responsibility for requiring similar insurance from its subcontractors and suppliers. The Subcontractor's failure to maintain complete insurance shall be a breach authorizing the Contractor, at the Contractor's sole election, either to terminate this Subcontract or to provide full insurance coverage at the Subcontractor's sole expense; however, in neither case shall the Subcontractor's liability be lessened.

Furthermore, HCGCC claims that Mandal's breached the subcontract section 15, which reads:

***Section 15.*** The Subcontractor shall not subcontract nor assign any part of this Subcontract without first obtaining the written consent and approval of the Contractor. Assignments of Subcontract proceeds are permissible but only if written notice of same is received and acknowledged in writing by a corporate officer of the Contractor at least thirty (30) days before the assigned proceeds are due and payable to the Subcontractor . . .

Also, as to indemnity, HCGCC cites the subcontract section 14 which states:

***Section 14.*** The Subcontractor covenants to defend, indemnify, save harmless, protect, and exonerate both the Contractor (its agents, employees, representatives, and sureties) and the Owner from any and all liability, claims, losses, suits, actions, demands, arbitrations, administrative proceedings, awards, judgments, expenses, attorneys' fees and costs pertaining to economic loss or damages, labor disputes, nonperformance of obligations, personal injury, death, or property damage which arise from or are connected with work undertaken or to be performed by the Subcontractor or which arise from or are connected with any other act or omission relating to the Subcontractor or to this Subcontract. The foregoing covenants and indemnity obligations shall apply to the fullest extent permitted by law, excepting only liability which is imposed exclusively because of the Contractor's sole negligence. The Subcontractor's liability insurance policies shall each contain contractual insurance coverage (including but not limited to products liability and completed operations) so as to protect fully the Subcontractor, Contractor, and Owner.

Thus, HCGCC contends it is entitled to defense and full indemnification from Mandal's.

Subsequently, each party filed a Motion for Summary Judgment.

*Summary Judgment Standard*

To be entitled to summary judgment, a party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant has the initial burden of proving that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Rule 56(c) compels the court to grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S. Ct. 2548. Before finding that no genuine issue for trial exists, the Court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

On August 27, 2008, the parties filed a joint motion to submit trial briefs in lieu of a jury trial should the Court be unable to resolve the issues on the motions for summary judgment. The parties stipulated that no disputes of material fact exist and only matters of law remain for the Court to determine.

*NES's Motion for Summary Judgment*

NES urges that HCGCC clearly breached its contract with NES and that HCGCC should indemnify it for the costs of defending the suits. NES notes that Harvey Green, the president of HCGCC, stated in his daily report for November 11, 2004, "accident resulting two deaths and two injuries requiring hospitalization. Subcontractor working after hours 'not known by superintendent' using unauthorized equipment leased by GC. Operator not qualified for operation lifting men and materials. Equipment overturned while traveling resulting in deaths and injuries. HCG not on site to witness." Furthermore, NES notes that Green testified "we had

6

a driver who did not know what he was doing." NES also states that the forklift contained specific decals that read "[d]o not lift, lower or carry personnel," and the owner's manual states "do not use to lift personnel." As argued in its complaint, NES proclaims that HCGCC 1) failed to read and comply with all of the safety instructions, 2) allowed unauthorized use of the equipment it rented from NES, 3) failed to ensure that the operators of the equipment rented from NES had been properly trained and certified, 4) allowed the keys to remain in the ignition of the subject forklift without supervision, 5) failed to carry commercial general liability insurance which named NES as an additional insured, 6) failed to provide NES with a certificate of insurance evidencing the current coverage, and 7) should indemnify NES for all costs, attorneys' fees, and expenses.

HCGCC avows that it was not a party to the Nance litigation, and Nance did not allege any liability or negligence on part of HCGCC. Moreover, HCGCC insists that its "breach" did not cause any damages because HCGCC was not operating the equipment at the time of the accident. Also, HCGCC argues that the contract does not state anything about removing the keys from the forklift. In sum, HCGCC concludes that it is not obligated to indemnify or defend injury, damage, or loss that is solely caused by NES alone, and since the suit was filed against NES, HCGCC should not be liable.

*Breach*

It is undisputed that HCGCC did not have a policy which named NES as an additional insured. Specifically, HCGCC breached paragraph 3(c) which required HCGCC to acquire an insurance policy which named NES as an additional insured. Thus, it is undisputed that HCGCC breached the agreement by not procuring a policy that named NES as an additional insured.

*Indemnity*

The Court finds HCGCC shall indemnify NES for costs incurred in any litigation in which injury, damage, or loss is not solely caused by NES since the contract between NES and HCGCC states that HCGCC

> agrees to indemnify and hold Company harmless against any and all claims, demands, or suits (including costs of defense, attorney's fees, expert witness fees, and all other costs of litigation) for any and all bodily injury, property damage, or any other damages or loss, regardless of whether such injury damage or loss is caused in whole or part by negligence, which arise out of, result from, or relate to the use, operation, condition, or presence of the equipment except where such injury, damage or loss is caused solely by the Company.

In the underlying action (Nance litigation), a jury held that NES was not negligent. NES has been absolved of liability in the Nance litigation, and the agreement between NES and HCGCC contains a provision excepting out injury, damage, or loss caused solely by NES; therefore, NES is not seeking to recover from its own negligence.

However, although paragraph 19 applies, NES's motion is premature until the resolution of the three remaining cases (filed by Nance's crew) against NES. At that time, the Court can determine damages to which NES is entitled, if any, in the three remaining cases. Although NES was found not liable in the Nance litigation, the Court will delay any awarding of damages[1] until the remaining three cases are resolved.

*HCGCC's and Mandal's Motion for Summary Judgment*

HCGCC contends that Mandal's insurance policy, which names HCGCC as an additional insured, provides coverage to HCGCC for claims made in the suit by NES against HCGCC. Also, HCGCC asserts that Mandal's breached the subcontract with HCGCC by hiring Nance

---

[1] The Court acknowledges that the damages in the Nance litigation would be limited to costs, expenses, and attorneys' fees.

8

Roofing to perform its duties without written consent and approval by HCGCC. Lastly, HCGCC argues that it is entitled to defense and full indemnification from Mandal's.

Mandal's maintains that the insurer is not a party to this action but is an indispensable party. Therefore, Mandal's contends, HCGCC should not be entitled to a declaratory judgment for that reason. Mandal's also insists that HCGCC waived its right to allege breach since 1) Richard Green of HCGCC instructed Steven Nance to do additional black in work; 2) Mandal's hired Steven Nance over three years before HCGCC alleged a breach[2]; 3) HCGCC did not put Mandal's on notice of the breach of the subcontract; 4) HCGCC did not seek rescission of the subcontract; and 5) HCGCC permitted Mandal's to complete the subcontract. However, regarding the above, Mandal's, as well as the other parties', have stipulated that no genuine issues of fact exist.

Mandal's urges that pursuant to MISS. CODE ANN. § 31-5-41, HCGCC is not entitled to indemnity beyond what was insured. Lastly, Mandal's also claims that HCGCC is not entitled to any indemnification for HCGCC's own negligence. Both parties agree that HCGCC cannot seek to be indemnified for its own sole negligence.

HCGCC rebuts that Mandal's did not raise Federal Civil Procedure Rule 19 (failure to join proper party) as an affirmative defense in their answer, and therefore, it should not be able to raise it now on summary judgment.

The Court holds HCGCC's motion for summary judgment based on breach of contract due to Mandal's failure to procure insurance is premature until the Court can determine whether a policy is in existence and whether HCGCC is provided coverage as agreed/contracted between

---

[2] Green testified in his deposition that he thought Nance and his crew were Mandal's employees. When asked, "What was your understanding of the relationship between Steven Nance and Harvey Green Construction Company, if they had any," Green stated, "the only thing I knew about them, they worked from Mandal's, because I called Mandal Roofing, and he said he was sending a crew to re-black in the roof." Further, when asked, "do you know whether Steve Nance was a subcontractor of Mandal," Green responded, "No, I did not at the time."

HCGCC and Mandal's. As to Mandal's argument that HCGCC failed to join a proper party, the Court finds the motion is denied as moot for reasons stated below in reference to Lexington's Motion to Intervene. Additionally, HCGCC's motion is premature as to the duty to indemnify because the Court must know fault allocations, if any, against NES.

Regarding Mandal's argument that HCGCC waived its right and is not entitled to indemnification pursuant to MISS. CODE ANN. 31-5-41, the Court finds the motion is denied as premature until the conclusion of the three remaining cases.

*Lexington Insurance Company's Motion to Intervene*

On November 18, 2008, Lexington Insurance Company ("Lexington") filed a Motion to Intervene this action. Lexington claims that it is an interested party because it is the insurer on Mandal's policy. Lexington asserts that it has been only recently made aware that HCGCC asserts that it is an additional insured on Mandal's policy, and that HCGCC claims the policy should cover the claims brought by NES against HCGCC.

This motion is unopposed, and this Court may grant this motion on those grounds alone pursuant to Local Rule 7.2(C)(2).[3] Notwithstanding that the Court may grant the motion on those grounds, the Court grants the motion on its merits as well. Federal Rule of Civil Procedure 24(a)(2) provides that intervention of right is appropriate when:

> On timely motion, the court must permit anyone to intervene who . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Court finds that Lexington has an interest in the subject of the action, and the disposition of this case could impair or impede Lexington's ability to protect its interest.

---

[3] Local Rule 7.2 (C)(2) states, "If a party fails to respond to any motion, other than a motion for summary judgment, within the time allotted, the court may grant the motion as unopposed."

*Conclusion*

Accordingly, NES's Motion for Summary Judgment is granted in part and denied as premature in part; and HCGCC's Motion for Summary Judgment is denied as premature. Also, Mandal's Motion for Summary Judgment is denied as moot in part and premature in part. Lastly, Lexington Insurance Company's Motion to Intervene is granted as unopposed or in the alternative on its merits. After resolution of the three remaining underlying actions, the parties may re-file the motions in order to resolve any remaining issues.

A separate order shall issue on this day.

So **ORDERED**, this the 15th day of December, 2008.

**/s/ Sharion Aycock**
**U.S. DISTRICT COURT JUDGE**